UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURA T. SUPPAN,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

Defendant.

Case No. C11-1028-RSM-BAT

**REPORT AND
RECOMMENDATION**

Laura Tess Suppan seeks review of the denial of her Supplemental Security Income and
Child Insurance Benefits applications. She contends the ALJ erred in (1) evaluating the opinions
of the treating, examining and non-examining doctors; (2) assessing her residual functional
capacity ("RFC"); and (3) asking the vocational expert hypothetical questions that did not
include all of her limitations. Dkt. 18. As discussed below, the Court recommends the
Commissioner's decision be **REVERSED** and **REMANDED** for further administrative
proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Suppan is currently 24 years old and has a GED.[1] On March 25, 2008, she applied

---

[1] Tr. 156, 222-35.

REPORT AND RECOMMENDATION - 1

1    for benefits, alleging disability as of August 1, 2005.[2] She later amended her alleged onset date

2    to August 22, 2005, her 18th birthday. Tr. 34. Her applications were denied initially and on

3    reconsideration.[3] After conducting a hearing the ALJ issued a decision on June 7, 2010, finding

4    Ms. Suppan not disabled.[4] As the Appeals Council denied Ms. Suppan's request for review, the

5    ALJ's decision is the Commissioner's final decision. Tr. 1.

6    **THE ALJ'S DECISION**

7    Utilizing the five-step disability evaluation process,[5] the ALJ found:

8    **Step one:** Ms. Suppan had not worked since August 22, 2005, the amended alleged onset
date.
9

10    **Step two:** Ms. Suppan had the following severe impairments: major depressive disorder
and prescription opiate dependency.

11    **Step three:** These impairments did not meet or equal the requirements of a listed
impairment.[6]
12

13    **Residual Functional Capacity:** Ms. Suppan could perform a full range of work at all
exertional levels, but with the mental non-exertional limitations of carrying out simple,
repetitive, one to two step tasks. She was limited to occasional and superficial contact
14    with the general public.

15    **Step four:** Ms. Suppan has no relevant past work experience.

16    **Step five:** As there are jobs Ms. Suppan could perform, she is not disabled.

17    Tr. 14 – 23.

18    **DISCUSSION**

19    **A.**    **The ALJ's evaluation of the medical opinion evidence**

20    Ms. Suppan argues the ALJ erred in evaluating the opinions of treating doctor David

21

---

22
[2] Tr. 22, 156, 159.
[3] Tr. 79, 105.
[4] Tr. 9-28.
23
[5] 20 C.F.R. §§ 404.1520, 416.920.
[6] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Shaw, M.D., examining doctor Theresa Lock, Ph.D., and non-examining doctors Steven Haney, M.D. and Lisa Hacker, M.D.  Dkt. 18.

Normally more weight should be given to the opinion of a treating doctor than to a nontreating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor.  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons."  *Id*. at 830-31.  Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id*.  (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

*1.  Dr. Shaw, M.D.*

Dr. Shaw has been Ms. Suppan's treating psychiatrist since February 2006.  Tr. 440, 537. In his April 30, 2010, declaration, he opined Ms. Suppan was "unable to perform low-stress, simple 1- to 2-step task, repetitive job wherein she would rarely interact with others on a regular and continuing basis, due to her mental symptoms and 'intense physical pain that prevent her from almost all activities'"; Ms. Suppan had a GAF score of 45; Ms. Suppan's pain medication affected her cognition and impaired her ability to function; and that Ms. Suppan was socially isolated, had poor stress tolerance and concentration problems.  Tr. 21, 537-41.

1  The ALJ rejected these opinions, first indicating Dr. Shaw had not formally tested Ms.

2  Suppan's ability to follow tasks.  This suggests the ALJ equated the lack of testing with a lack of

3  objective medical evidence.  However, objective medical evidence of the limitations caused by

4  mental illness may consist of the diagnoses and observations of professionals trained in the field

5  of psychology.  *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on

6  clinical observations supporting psychiatric diagnosis is competent evidence); *Sanchez v. Apfel*,

7  85 F. Supp. 2d 986, 992 (C.D. Cal. 2000).  Here, Dr. Shaw rendered his opinions based on his

8  diagnosis, observations and treatment of Ms. Suppan since 2006.  The record thus amply

9  establishes Dr. Shaw's opinions were supported by objective medical evidence, and that the ALJ

10  erred in finding otherwise.

11  Second, the ALJ rejected Dr. Shaw's opinions finding the doctor's treatment notes

12  reflected few clinical findings and the one formal mental exam the doctor performed showed Ms.

13  Suppan was "mildly clinically depressed."  Tr. 21.  This finding is not supported by the record.

14  The ALJ is correct that when Dr. Shaw first saw Ms. Suppan in February 2006, the doctor opined

15  Ms. Suppan was mildly clinically depressed.  Tr. 442.  But the ALJ is incorrect that this

16  accurately captures the severity of Ms. Suppan's limitations.  After his initial exam, Dr. Shaw

17  saw Ms. Suppan for two years and documented that while Ms. Suppan had good days and bad,

18  her mental health problems were getting worse.  For instance, in December 2006, the doctor

19  noted Ms. Suppan was hospitalized after "feeling hopeless and suicidal."  Tr. 431.  In mid 2008

20  Ms. Suppan was again feeling suicidal (Tr. 397) and was subsequently hospitalized in October

21  (Tr. 390) and November after cutting her wrists.  Tr. 388.  In short, the doctor's notes are

22  consistent with his April 2010 opinion that Ms. Suppan had significant, not just mild, mental

23  health problems that severely impair her.

REPORT AND RECOMMENDATION - 4

1    Third, the ALJ rejected the doctor's opinions as inconsistent with the medical record as a

2    whole, and inconsistent with Ms. Suppan's daily activities. Tr. 21. This conclusory finding is not

3    sufficient to reject a treating doctor's opinion. As the Court in *Embrey v. Bowen*, 849 F.2d 418

4    (9th Cir.) stated:

5            To say that medical opinions are not supported by sufficient
             objective findings or are contrary to the preponderant conclusions
6            mandated by the objective findings does not achieve the level of
             specificity our prior cases have required, even when the objective
7            factors are listed seriatim. The ALJ must do more than offer his
             own conclusions. He must set forth his own interpretations and
8            explain why they, rather than the doctors', are correct.

9    *Id.* at 421–22.

10        And fourth, the ALJ rejected the doctor's opinions about Ms. Suppan's physical

11   impairments as outside the doctor's area of expertise. Tr. 21. A doctor's area of expertise is

12   relevant to the determination of how much weight the doctor's opinion should be given;

13   however, declining to consider a physician's opinions regarding medical limitations on the basis

14   that they are outside the doctor's area of expertise is not a legitimate reason by itself to fail to

15   consider the opinion entirely. *See* 20 C.F.R. § 404.1527(d)(5); *Sprague v. Bowen,* 812 F.2d

16   1226, 1232 (9th Cir. 1987). But this is exactly what the ALJ did. Dr. Shaw is a medical doctor.

17   As Dr. Shaw's certification in psychiatry, alone, is insufficient to establish the doctor is

18   unqualified to render opinions about Ms. Suppan's physical impairments, the ALJ erred.

19        In sum, the ALJ committed both errors of law and fact in rejecting Dr. Shaw's opinions.

20   Because the Court finds the ALJ erred in rejecting Dr. Shaw's April 2010 pre-hearing opinions,

21   and the case should be remanded for further proceedings, the Court need not address, here, Ms.

22   Suppan's arguments regarding the opinions given in Dr. Shaw's June 2010 post-hearing

23   declaration. Dkt. 18 at 14.

1     *2.   Dr. Lock, Ph.D.*

2     Examining doctor Theresa Lock, Ph.D., diagnosed Ms. Suppan with major depressive

3 disorder, recurrent, moderate to severe and reflex sympathetic dystrophy causing pain.  Tr. 300.

4 Dr. Lock opined Ms. Suppan could not interact with coworkers or the general public and could

5 not maintain regular work attendance or deal with the normal stresses of the workplace due to

6 her psychiatric symptoms.  Tr. 301.  The ALJ rejected these opinions finding they were largely

7 based on Ms. Suppan's self-report which "is not always consistent" and also were inconsistent

8 with the medical evidence and Ms. Suppan's daily activities.  Tr. 21.

9     These types of conclusory statements, as discussed above, are insufficient grounds to

10 reject the doctor's opinions.  Here the ALJ did not explain why Dr. Lock's opinions were

11 inconsistent with the medical evidence or with Ms. Suppan's daily activities, or why he found

12 the doctor relied largely on Ms. Suppan's self-report.  Additionally, while an ALJ may reject a

13 doctor's opinion based on a claimant's self report that has been properly discounted as

14 incredible, an ALJ may not reject a doctor's opinion based on the sort of cryptic findings—"not

15 always consistent"—made here.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

16     The ALJ also found Dr. Lock was not qualified to render opinions about physical

17 impairments.  The propriety of this finding is irrelevant.  The two limitations noted above that

18 the ALJ rejected were based on Ms. Suppan's mental health problems—limitations clearly

19 within Dr. Lock's area of expertise as a psychologist.  Accordingly, the ALJ committed both

20 errors of fact and law in rejecting the opinions of Dr. Lock.

21     *3.   Dr. Haney, M.D., and Dr. Hacker, M.D.*

22     The ALJ gave great weight to the opinion of non-examining doctor Steven Haney, M.D.,

23 which was affirmed by reviewing doctor Lisa Hacker, M.D.  Tr. 21.  Ms. Suppan argues, and the

1  Court agrees, the ALJ erred.  First substantial evidence does not support the ALJ's decision to

2  favor Dr. Haney's opinions over the opinions of treating doctor Shaw and examining doctor

3  Lock.  The opinion of a non-examining physician cannot by itself constitute substantial evidence

4  that justifies the rejection of the opinion of either an examining physician or a treating physician.

5  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

6      In some cases, an ALJ may reject the opinion of a treating or examining physician, based

7  in part on the testimony of a non-examining doctor but only where there is other evidence that

8  supports the ALJ's decision such as laboratory test results, or contrary reports from examining

9  doctors or treating doctors.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989).

10  This is not such a case.  The ALJ found the non-examining doctors' opinions were "consistent

11  with the objective medical evidence" (Tr. 21) but this is a conclusory statement that does not set

12  forth any facts establishing there is "other evidence" that would permit the ALJ to favor the

13  opinions of Dr. Haney and Dr. Hacker over the treating and examining doctors' opinions.

14      Second, Dr. Haney's opinions, in any event, do not support the ALJ's assessment of Ms.

15  Suppan's residual functional capacity.  Dr. Haney opined Ms. Suppan could perform more than

16  one or two step instructions in a reasonably consistent manner but "[h]er depression with

17  accompanying low-energy would interfere with her ability to maintain regular as attendance and

18  to persist through the normal workweek."  Tr. 304.  The doctor also opined Ms. Suppan "would

19  have difficulty with the stress of interacting with the public."  *Id.*  These opinions are consistent

20  with Dr. Shaw's opinions that Ms. Suppan's "stress tolerance was poor" (Tr. 539) and that her

21  "symptoms would prevent her from having the consistency needed to maintain a job" (Tr. 541),

22  and Dr. Lock's opinion Ms. Suppan could not maintain regular attendance or complete a normal

23  workday and that she had low stress tolerance rendering her unable to work.  Tr. 301.

In sum, the ALJ's evaluation of the non-examining doctor's opinions is not supported by substantial evidence and was erroneous.

**B.      The ALJ's residual functional capacity assessment and remand for further proceedings**

The ALJ's errors in evaluating the medical evidence were not harmless as they affect the propriety of the ALJ's assessment of Ms. Suppan's RFC and the hypothetical questions that were posed to the vocational expert.  Where an ALJ fails to provide adequate reasons for rejecting a physician's opinion, the Court may credit that opinion as a matter of law.  *See Lester*, 81 F.3d at 834.  However, courts retain flexibility in applying the credit as true theory.  *Id.*  Where it is not clear from the record that the ALJ would be required to award benefits if the evidence is accepted were credited, the Court may remand for further determinations.  *Id.*   Here, Dr. Shaw's records show Ms. Suppan's mental health problems grew worse from the time he initially saw her in 2006 to the time he rendered his 2010 written opinions.  Based on this record, the Court cannot say Dr. Shaw's opinions and record establish as a matter of law that Ms. Suppan was disabled from the alleged onset date.  The Court thus concludes that remand for further proceedings is appropriate.

On remand, the ALJ should reassess the opinions of Dr. Shaw, Dr. Lock, Dr. Haney, and Dr. Hacker.  The ALJ should further develop the record and redo the five-step evaluation process as necessary.  If the ALJ's residual functional assessment is revised, the ALJ will also call a vocational expert ("VE") to testify about jobs that may exist with a properly framed hypothetical that incorporates all of Ms. Suppan's limitations.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand,

1    the ALJ must (1) reevaluate the medical evidence, including the opinions of Dr. Shaw, Dr. Lock,

2    Dr. Haney, and Dr. Hacker; (2) develop the medical record as necessary; (3) reassess Ms.

3    Suppan's residual functional capacity as necessary; and (4) reassess steps four and five of the

4    sequential evaluation process utilizing a vocational expert as deemed appropriate.

5         Objections, if any to this Report and Recommendation must be filed and served no later

6    than **March 20, 2012**. If no objections are filed, the matter will be ready for the Court's

7    consideration on **March 23, 2012**. If objections are filed, any response is due within 14 days

8    after being served with the objections. A party filing an objection must note the matter for the

9    Court's consideration 14 days from the date the objection is filed and served. Responses to

10   objections must be filed no later than 14 days after being served with objections. Objections and

11   responses shall not exceed twelve pages. The failure to timely object may affect the right to

12   appeal.

13        DATED this 28th day of February, 2012.

14

15

16   _____

     BRIAN A. TSUCHIDA

17        United States Magistrate Judge

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 9